# Rawle's Appeal.
# Carter's Appeal.
# Appeal of the Pennsylvania Company for Insurance on Lives and Granting Annuities.
# In re Peace's Estate.

A testator, in a will disposing of a considerable estate of his own and of a larger estate of his deceased wife which he enjoyed for life, and as to which he had an absolute power of appointment, made this provision: "The residue of my estate, of every kind, and that left to me by my beloved wife by her last will and testament to dispose of as I deemed best, I direct my executors to divide into five parts." He then devised and bequeathed one part each to his two sons, and one each to his three daughters. He further provided "the three last parts of my estate are to be held in trust by my executors or trustees, and the interest to be paid annually into their own [the daughters'] hands." Testator further gave his daughters power to dispose of their shares by will if they should leave no children, but if either should leave children they were to take their mother's share at her death. If any of testator's children died before attaining majority, he provided that his or her part of his estate should be divided among the survivors:

*Held*, that the trust for the daughters' shares applies to the three shares of his wife's estate as well as of the testator's own estate.

10 Outerbridge.—13.

April 1, 1884. Before MERCUR, C. J., GORDON, TRUNKEY, GREEN and CLARK, JJ. PAXSON and STERRETT, JJ., absent.

APPEALS from the Orphans' Court of *Philadelphia county:* Of January Term, 1884, Nos. 106, 107 and 108.

These were three appeals (1) by James Rawle et al., executors of the will of Edward Peace, deceased; (2) by Robert Carter, guardian of Coleman Peace Brown; (3) by the Pennsylvania company for Insurances on Lives, etc., guardians of Anna Coleman Watts and John Murray Watts, all from the same decree, in the matter of the will of Dr. Edward Peace, deceased.

The case arose upon a petition filed by James Rawle et al., executors of said decedent, praying (1) that a certain division of real estate into five equal parts, made by the petitioners, as directed by Dr. Peace's will, be confirmed by decree of the court; (2) that the court decree as to who are entitled to said respective shares; and (3) that the petitioners be authorized to make good the said division by executing proper deeds of conveyance; or (4) that the respective parties be decreed to interchange the necessary cross deeds to that end.

Answers were filed, which admitted the facts averred in the petition, which were as follows:

Mrs. Anna C. Peace, wife of Edward Peace, died February 21, 1876, having by her will devised and bequeathed her residuary real and personal estate to her husband, Edward Peace, for his life, and at his death to such persons and in such shares and manner as he by will might appoint.

Dr. Edward Peace survived his wife, and being the owner of real and personal estate other than that passing under the said will of his wife, died September 10, 1879, having by his will directed, inter alia, as follows:

" The residue of my estate, of every kind, and that left to me by my beloved wife by her last will and testament, to dispose of as I deemed best. I direct my executors to divide into five parts. One part I will and bequeath to my son Philip Physick Peace; one part I will and bequeath to my son Edward Coleman Peace; one part I will and bequeath to my daughter Anna Peace Bache; one part I will and bequeath to my daughter Florence Peace; one part I will and bequeath to Mary Peace. *The three last parts of my estate are to be held in trust by my executors or trustees, and the interest to be paid quarterly into their own hands.*

" I also give to my daughters power to dispose of their shares by will, if they leave no children, as they choose; but if either should leave children, they are to inherit their mother's share equally at her death. If either of my children

should die before attaining the age of twenty-one years, their part of my estate is to be divided among the survivors equally.

"I appoint James Rawle, J. Coleman Drayton, John S. Watts, Philip P. Peace, and Edward Coleman Peace as executors and trustees."

Edward Peace left surviving three daughters, Anna, Florence and Mary, and two sons, Philip and Edward. Anna, one of the respondents, was then the widow of Alfred B. Bache; after her father's death she married the respondent, Henry H. Brown. Florence was then, and is now, the wife of Robert M. Smith, both respondents herein; they have two minor children, Francis G. and Vernon P.

Mary was then the wife of John S. Watts, one of the petitioners; she died before this petition was filed, leaving her husband and two children, Anna C. and John M. Philip and Edward, the two sons, are of age, and are petitioners herein.

Mary devised all her property, real and personal, to her husband, John S. Watts. On November 6, 1880, the Pennsylvania Company for Insurance, etc., appellants here, were appointed guardian of these two children.

The petitioners, as directed by the will, divided the real estate in question into five equal parts, which division was set forth in the petition.

Of the entire property disposed of by Edward Peace more than five sixths consisted of property real and personal of which Anna C. Peace died seised and possessed; the entire personal property was about $190,000, and real property about $145,000. Edward Peace drew his own will.

The petition further set forth that the petitioners were advised that one fifth part of the real estate in question was vested in them as trustees for Anna P. Brown; another as trustees for Florence P. Smith; another was vested in the minor children of Mary; and the remaining two shares were vested in the two sons Philip and Edward Peace.

The answers of Mr. and Mrs. Brown and Mr. and Mrs. Smith set forth that they were advised that each of them was entitled to one share of the estate in fee simple, free of trust.

Thus a question arose as to the estate and interest the daughters took. There was no question as to the interest of the sons.

The case was first heard by the court below upon petition and answers. Counsel for Mrs. Brown and Mrs. Smith contended that the first clause of the will gave to the daughters the fee of the real estate and the personal estate absolutely, *both in their shares of Dr. Peace's own estate and in that of his wife over which he had a power of appointment*, and that the

clause directing a trust of the daughters' shares applied *only* to Dr. Peace's own estate.

The court, in an opinion by PENROSE, J., held that "a literal adherence to the language of the will of Dr. Peace would confine the operation of the trust to the estate of which he was the absolute owner; but this construction would leave little or nothing to be covered by it. . . . . . With the very extensive powers which he possessed under his wife's will, it was natural for him, when making a joint division of the two estates, to speak of them as his estate; and the precise signification of his words must give way to his manifest intention."

After this opinion of the court below was delivered, Mrs. Brown remembered that her father had spoken to her of a certain interest he owned in unseated lands in Northern Pennsylvania, which since his death had become very valuable as oil lands. It had not been supposed that the interpretation of the will would hinge upon the relative sizes of Dr. Peace's own estate and that derived from his wife. It was then agreed between the parties that the pleadings should be amended, and a more careful appraisement of both estates was made, by which it appeared that Dr. Peace's estate was relatively larger than as averred in the original petition.

A question of fact then arose as to whether Dr. Peace, when he made his will, had in his mind the probable or even possible, future value of these wild lands. An examiner was appointed to take testimony, from whose report it appeared that the development of these lands took place two and a half years after the date of the will, and that Dr. Peace did not at that time actually deem the lands of any great present or even future value.

The case having been again heard by the court below, upon the amended petition and answers, and proofs, the court reversed its former decision, PENROSE, J., filing the following opinion:

"As the case was originally presented to us, it was difficult to resist the conclusion, in view of the supposed insignificancy of his own estate, that the testator designed, in the trust which he created for his daughters, to include the estate which passed under their mother's will, as to which, as his power of appointment was unlimited, and he had possessed a life estate, he might naturally speak of it as his own.

"But it is now shown that the impression created by the petition and answers was erroneous; and that not only was the estate of which he was himself the owner considerable, but that it embraced a property which he seems to have supposed might in the future have a very large value; and hence the wish to have it placed beyond the present power of disposal of

his daughters and to secure it to them and to their children was an entirely natural one, especially as their mother's estate gave them enough for their present necessities. The terms of the will may therefore be satisfied without any departure from their literal meaning: and this is always the safest rule of construction.

"The residue of *my* estate,' he says, 'of every kind, *and* that left to me by my beloved wife by her last will and testament to dispose of as I deemed best, I direct my executors to divide into five parts. One part I will and bequeath to my son Philip; . . . . . one part I will and bequeath to my son Edward; . . . . . one part I will and bequeath to my daughter Anna; . . . . . one part I will and bequeath to my daughter Florence; . . . . . one part I will and bequeath to Mary; . . . . . The three last parts of *my* estate are to be held in trust,' &c., &c., &c.

"As he thus speaks in the beginning of the paragraph of his own estate and that of his wife subject to his power of appointment, as separate and distinct, it must be assumed that the fact that they were not the same was still in his mind when he directed that his daughters' shares of *his* estate shall be held in trust; his intention being that their mother's estate should go to them absolutely, just as she had directed in the event of the non-exercise of the power of appointment.

"The decree heretofore made must therefore be amended so as to exclude from the trust the daughters' shares of their mother's estate, which will be awarded to them absolutely."

After the case was decided, but before the decree was entered Anna Brown died, leaving a husband and an infant child to survive her, and giving the greater part of her estate to her husband. Her death and a copy of her will were suggested of record.

A lengthy formal decree was settled in accordance with the foregoing opinion, from which decree the several parties took these appeals.

The executors of Dr. Edward Peace's will filed the following assignments of error:—

The court below erred:—

1st. Because it decreed that by the proper construction of the said will one undivided fifth part of the real estate described in the petition is therein devised in fee simple to Florence Peace Smith, one of the respondents.

2d. Because it directed the petitioners to execute and deliver such deeds of conveyance, release, or otherwise, as shall be necessary to vest in the said Florence Peace Smith in severalty in fee simple the title to the various parcels of real estate described in the petition as constituting "No. 5.—Share for Trustees of Thomas Peace Smith."

3d. Because it did not decree that by a proper construction of the said will the said undivided interest in said real estate is devised to the petitioners to hold during the life of the said Florence Peace Smith, in trust, however, to pay the income thereof quarterly into her own hands, and after the death of the said Florence Peace Smith the said real estate is thereby devised to her children equally, if she should have any, and in default of such children, then to such person or persons as the said Florence Peace Smith may by her will direct; and in default of such children or such directions, to the heirs-at-law of the said Florence Peace Smith.

The specifications of error in the appeal of Robert Carter, guardian, etc., were as follows:—

The court below erred:—

1st. Because it decreed that by the proper construction of said will one undivided fifth part of the real estate described in the petition is therein devised in fee simple to Anna Peace Brown, one of the respondents.

2d. Because it directed the petitioners to execute and deliver to the person or persons entitled thereto under the will of the said Anna Peace Brown all such deeds of conveyance, release, or otherwise, as shall be necessary to vest in him or them the various parcels of real estate described in the said petition as constituting " No. 1.—Share for Trustees of Anna P. Brown."

3. Because it did not decree that by the proper construction of the said will an undivided one fifth part of the real estate is therein devised to Coleman Peace Brown, the sole surviving child of Anna Peace Brown.

4th. Because it did not decree the said petitioner to execute such deeds of conveyance, release, or otherwise, as may be necessary to vest in the said Coleman Peace Brown in severalty in fee simple, the various parcels of real estate described in the said petition as constituting " Share No. 1.—The Share of Anna Peace Brown."

The specifications of error in the appeal of the Pennsylvania Company, etc., guardians, were as follows:—

The court below erred:—

1st. Because it decreed that by the proper construction of the will of Edward Peace, deceased, one undivided fifth part of the real estate described in the petition is therein devised in severalty in fee simple to Mary Peace Watts.

2d. Because it directed the petitioners, James Rawle, John S. Watts, Philip P. Peace, and Edward C. Peace, to execute and deliver such deeds of conveyance, release, or otherwise, as shall be necessary to vest in severalty in fee simple in John S. Watts, devisee under the will of the said Mary Peace

Watts, the various parcels of real estate described in their petition as constituting "Share No. 3.—The Share of Anna Coleman Watts and John Murray Watts."

3d. Because it did not decree that by the proper construction of the said will the said undivided one fifth interest in the said real estate is devised to the said Anna Coleman Watts and John Murray Watts equally in fee simple.

4th. Because it did not direct the said petitioners to execute such deeds of conveyance, release, or otherwise, as may be necessary to vest in the said Anna Coleman Watts and John Murray Watts, equally, in fee simple, the said various parcels of real estate constituting "Share No. 3.—Share of Anna Coleman Watts and John Murray Watts."

The three appeals were argued together.

*Francis Rawle*, (*Walter George Smith* with him,) for the said executors, appellants.

*John G. Johnson*, for the Pennsylvania Co., guardian appellant.

*Francis Henderson*, for Robert Carter, appellant.

*David W. Sellers*, for the appellees.

Mr. Justice TRUNKEY delivered the opinion of the court, April 21, 1884.

It is clearly shown in the opinion of the learned judge of the Orphans' Court that the testator created a valid trust as to the shares given to his daughters, and that he had the right to include in the trust the estate subject to his disposition under the will of his wife. He held that a literal adherence to the language of the will would confine the operation of the trust to the estate of which the testator was absolute owner, but owing to the smallness of that estate and the largeness of the estate derived from his wife, both were intended to be included in the trust. Afterwards, upon its being shown that the estate of which the testator was absolute owner was of considerable magnitude, it was decreed that the trust was confined to that alone. Whether this is correct is the sole question to consider.

The meaning of the will is not controlled by the value of the respective estates. If one were small that fact might be treated as evidence bearing upon the testator's intent; but as each is of some magnitude, and the income of one fifth of both is not a very large provision for a daughter's support,

there is no reason without the will for belief that either was intended to be excluded.

This will in express terms includes the estate which the testator had power to dispose of by appointment. The Act of June 4, 1879, § 3, P. L. 88, cited by the appellants at the argument, affords no aid in determining whether that estate is within or without the operation of the trust.

The testator directed his executors to divide the residue of his estate and that left to him by his wife into five parts, and gave one part to each of his sons and daughters. His wife devised and bequeathed real and personal estate to him for life, and after his decease to such person or persons, and in such shares, and in such way and manner as he, by his will, may nominate, direct and appoint. In his will both estates are brought together for division. Whatever he could do with his own he could do with that left to him by his wife. Having directed their division into equal parts, as if one estate, it was natural that he should speak of them in other parts of the will as his estate. The three last parts of his estate he gives in trust to his executors. If there were nothing else this might be construed as excluding the estate derived from his wife. Immediately following the trust provision he gives his daughters power to dispose of their shares by will, if they should leave no children; but if either should leave children they to take their mother's share at her death. Then he declares that if either of his children should die before attaining the age of twenty-one years, such child's part of his estate is to be divided among the survivors. It is hardly possible that the testator intended that if one of his sons should die in his minority that the entire part of both estates given to him should not go to the surviving children. In case of the death of one, he meant the fifth part of the estates as an entirety should be divided among the others. He used the words "my estate" as including the whole. The words "parts" and "shares" are used in the same sense, and the power vested in the daughters to dispose of their shares by will in the event of their dying childless, referred to the parts to be made by his executors. In the clause creating the trust, if the words "three last parts" stood alone, they would unmistakably mean the parts he had before bequeathed to his daughters. They are limited by the words "of my estate," and these, we think, were used in the same sense as in the clause relating to the death of a child under the age of majority.

We are of opinion that the assignments of error are well taken.

Decree reversed, at the cost of the appellee, and record remitted for further proceeding.

The Prothonotary will enter the same decree as the above in the appeals of Carter, No. 107, and the Pennsylvania Co. No. 108.